UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SEAN GORDON WESCOTT,

Plaintiff,

v.

SARAH M. SABRI, et al.,

Defendants.

No. 6:12-cv-00018-HU

**FINDINGS AND RECOMMENDATION**

Marianne Dugan
Email: mdugan@mdugan.com
259 E. 5th Avenue, Suite 200-D
Eugene, OR 97401
Telephone: (541) 338-7072
Facsimile: (866) 650-5213

Attorney for Plaintiff

Ellen F. Rosenblum
Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Facsimile: (503) 947-4794

Attorneys for Defendants

HUBEL, Magistrate Judge:

On January 3, 2012, Plaintiff Sean Gordon Wescott ("Plaintiff"), a former inmate in the custody of the Oregon Department of Corrections ("ODOC"), commenced this civil rights action pro se pursuant to 42 U.S.C. § 1983. Plaintiff named as defendants several current and former ODOC employees (collectively, "Defendants"). The gist of Plaintiff's complaint is that Defendants failed to award him time-served and/or earned-time credits, which resulted in him being detained 116 days past his release date.

Defendants now move for summary judgment on the grounds that: (1) Plaintiff's remaining claims for violation of the Eighth and Fourteenth Amendments and false imprisonment fail on the merits because Plaintiff cannot demonstrate that he was detained past the expiration of his lawful sentence; (2) Defendants are entitled to qualified immunity for any alleged violation of Plaintiff's constitutional rights; and (3) Plaintiff's false imprisonment claim is barred by the Eleventh Amendment. For the reasons set forth below, Defendants' motion (Docket No. 41) for summary judgment should be granted.

## I. FACTS AND PROCEDURAL HISTORY

In December 2008, Plaintiff was convicted, upon a conditional plea of guilty, in Lane County Circuit Court, Case No. 20-08-23520, of two counts of coercion (hereinafter, "Counts Five and Six") and was sentenced to 42 months probation. Plaintiff subsequently violated certain conditions of his probationary sentence. As a result, on February 23, 2009, the Lane County Circuit Court entered a criminal judgment revoking Plaintiff's probation and sentencing

him to 38 months imprisonment, consisting of two consecutive 19-month terms on Counts Five and Six:

> Coercion (Count 5)
>
> IT IS FURTHER ORDERED that Defendant shall serve a period of 19 months in the custody of the Department of Corrections, with credit for time served. Defendant is continued in the custody of the Lane County Supervisory Authority for transportation to the Department of Corrections.
>
> IT IS FURTHER ORDERED that the Defendant may be considered by the executing or releasing authority for any form of temporary leave from custody, *reduction in sentence*, work release, alternative incarceration program or program of conditional supervised release authorized by law for which the Defendant is otherwise eligible at the time of sentencing.
>
> . . . .
>
> Coercion (Count 6)
>
> IT IS FURTHER ORDERED that Defendant shall serve a period of 19 months in the custody of the Lane County Supervisory Authority, consecutively to the sentence imposed in Count 5, with credit for time served, and with consideration, at the discretion of the Supervisory Authority, for all alternative programs. Defendant is sentenced to the custody of the Lane County Supervisory Authority which shall retain custody over the defendant until all 19 months have been served.

(Smith Decl. Ex. 1 at 1-2) (emphasis added). Plaintiff was taken into custody the following day.

The Lane County Sheriff's Office provided ODOC with a statement of imprisonment for Case No. 20-08-23520 and certified that Plaintiff had served 61 days in jail (e.g., the combined periods of October 16, 2008, until November 26, 2008, and February 5, 2009, until February 24, 2009) prior to his admission to ODOC custody. ODOC applied that 61 days of time-served credit to Count Five. According to ODOC's Administrator of the Offender Information and Sentencing Computation Unit ("OISC"), Bethany Smith

("Smith"), Plaintiff did not receive time-served credit with respect to Count Six because Oregon Administrative Rule ("OAR") 291-100-0080(3)(b) provides that "an inmate will receive time served credit for time confined in a county jail or other non-Department of Corrections facility (as authorized by statute) against only the first of multiple consecutive sentences unless different dates are indicated for the consecutive sentences." (Smith Decl ¶ 12) (quoting OAR 291-100-0080(3)(b)).

In April 2009, Plaintiff was convicted, upon a conditional plea of guilty, in Lane County Circuit Court, Case No. 20-09-08776, of felony stalking (hereinafter, "Count Two") and was sentenced to 41 months imprisonment, 31 months of which was to be served "concurrent with the sentence imposed in case number 20-08-23520 and 10 months [of which were to] be consecutive to any time currently being served." (Smith Decl. Ex. 2 at 2.) In other words, "[b]etween the two cases, the total prison term was 48 months, not counting any credits."[1] (Pl.'s Resp. at 4.) As with Count Five in Case No. 20-08-23520, the judgment stated that Plaintiff could "be considered by the executing releasing authority for any form of temporary leave from custody, *reduction in sentence*, work release, alternative incarceration program or program of conditional or supervised release authorized by law for

[1] During his incarceration, Plaintiff sent a few inmate communication forms that seemed to challenge/ express confusion regarding whether his total prison term should have been 48 months, less any earned-time or time-served credits, based on the language of the judgments concerning concurrent and consecutive sentences. (*See, e.g.*, Smith Decl. Ex. 7 at 1.) Because Plaintiff's response brief and complaint suggest that this is no longer an issue, it will not be addressed here.

which . . . [he] is otherwise eligible at the time of sentencing." (Smith Decl. Ex. 2 at 2) (emphasis added).

Prior to July 1, 2009, ORS 421.121(2) "provided that the maximum amount of reduction in a term of incarceration that could be earned for appropriate institutional behavior (so called 'earned time credit') could not exceed 20 percent of the total term of incarceration." *State v. Portis*, 348 Or. 559, 561 (2010). The statute was amended, effective July 1, 2009, "to potentially increase the maximum to 30 percent for inmates not convicted of certain violent felonies." *Id.* (citing Or. Laws 2009, ch. 660, §§ 17, 18 (House Bill (HB) 3508)). Pursuant § 18 of HB 3508, ODOC "was required to provide notice of the inmate's potential eligibility for the additional earned time credit to the inmate and to the victim of the crime, as well as the district attorney, the presiding judge, and the trial court administrator for the county in which the inmate had been convicted." *Id.* at 562.

Plaintiff's crimes were not among those statutorily excluded from potential eligibility (i.e., not among the enumerated violent felony offenses) for the additional earned-time credit. (Smith Decl. ¶ 21) (explaining that coercion and felony stalking were "crimes not excluded from consideration for the additional earned time under HB 3508.")

Ultimately, however, Defendant Joe McCool ("McCool"), a prison term analyst, determined that Count Six was not eligible for additional earned-time credit based on the language of the judgment in Case No. 20-08-23520, which did not explicitly authorize a reduction in sentence with respect to that count (unlike the judgments concerning Counts Two and Five). *See* OR. REV. STAT. §

137.750 ("[T]he court shall order on the record in open court as part of the sentence imposed that the defendant may be considered by the executing or releasing authority for . . . reduction in sentence . . . , unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or program.")

In making this determination, McCool relied on OISC policy which requires, as a condition precedent to notice being sent in accordance with § 18 of HB 3508, that the "[s]entence must be eligible for earned time pursuant to ORS 137.750." (Smith Decl. Ex. 9 at 5.) This policy was formulated based on OISC's review of the applicable statute and advice from the Oregon Department of Justice ("ODOJ"). Prison term analysts, like McCool, and other OISC employees "do not have any discretion to deviate from this policy." (Smith Decl. ¶ 23.)

On October 16, 2009, McCool sent the Lane County Circuit Court a letter explaining HB 3508, along with a proposed supplemental judgments on Counts Two and Five "that allowed the Court to determine whether [P]laintiff was eligible for an increase in earned time on those counts." (Smith Decl. ¶ 22.) No such letter was sent with respect to Count 6. A little over a month later, on November 25, 2009, the Lane County Circuit Court signed the supplemental judgments authorizing 30% earned-time for Counts Two and Five.

Also in late November 2009, Plaintiff sent an inmate communication form to McCool claiming that there was a "mistake" in his sentence computation and that he was eligible for 30% earned-time on Count Six as well. On December 1, 2009, Defendant Tasha

Black ("Black"), a prison term analyst, responded to Plaintiff, stating: "You were not eligible to be considered for 30% earned time on . . . count 06 as the judgment didn't allow you earned time on that count." (Smith Decl. Ex. 17.)

Effective February 17, 2010, "the legislature amended HB 3508 and ORS 421.121 to reduce the potential maximum earned time credit from 30 percent to 20 percent of an inmate's total term of incarceration." *Portis*, 348 Or. at 564 (citing Or. Laws 2010, ch. 2, § 5(5) (Senate Bill (SB) 1007)). However, the legislature provided "that inmates who had already been granted eligibility for the additional earned time credit would retain them." *Id.* In effect, SB 1007 divided inmates initially identified under HB 3508 as potentially eligible for the additional earned-time credit into two groups:

> One group—those inmates, who before the effective date of SB 1007, were determined by a court to be eligible for additional earned time credit—retains the benefit of HB 3508. However, a second group—those inmates who had not obtained the necessary court approval before the effective date of SB 1007—lost their eligibility for additional earned time credit under HB 3508.

*Id.* at 564-65.

The OISC policy manual, which was formulated based on OISC's review of ORS 421.121 and advice from ODOJ, contains a similar statement regarding the application of SB 1007:

> The 2010 Legislature passed Senate Bill 1007 (SB 1007) effective February 17, 2010. It further amended ORS 421.121 so that inmates whose crimes were committed on or after February 17, 2010, but prior to July 1, 2011, may only received [sic] a maximum of 20% earned time, if otherwise eligible. SB 1007 halted any further approval of 30% earned time by the courts from the House Bill 3508 (HB 3508) notification process. Therefore, if the court was not notified and/or did not approve 30% earned time by 10:00 a.m. on February 17, 2010, the inmate is not eligible to receive the additional amount.

(Smith Decl. Ex. 14 at 20.) OISC formulated this policy on the advice of ODOJ. Prison term analysts and other OISC employees "do not have any discretion to deviate from [its terms]." (Smith Decl. ¶ 29.)

On June 17, 2010, Plaintiff sent another inmate communication form maintaining that he was eligible for the 30% earned-time credit on Count Six. He asked for his sentence to be recalculated and for a "determination hearing." (Smith Decl. Ex. 16 at 1.) Black responded on June 22, 2010, stating that Plaintiff was restricted from earned-time credit on Count Six based on the language of the judgment and that he "would have to ask the Court to allow you earned time on that case to be considered for the 30%." (Smith Decl. Ex. 16 at 1.)

On September 10, 2010, the Lane County Circuit Court entered a corrected judgment, wherein it explicitly stated that Plaintiff could "be considered by the executing or releasing authority for . . . reduction in sentence" with respect to Count Six. (Smith Decl. Ex. 17 at 2.)

On November 18, 2010, Plaintiff submitted an inmate communication form requesting that his sentence be recalculated in accordance with the corrected judgment and that 61 days of time-served credit be applied to Count Six. Six days later, Black sent Plaintiff a response indicating that: (1) he was only entitled to "receive time served credit for the time confined in county jail against only the first of multiple consecutive sentences unless different dates are certified" (i.e., Count Five, not Count Five *and* Count Six); and (2) the projected release date had been

recalculated consistent with the correct judgment allowing for a reduction in sentence. (Smith Decl. Ex. 20 at 1.)

Contrary to the OISC policy manual, Plaintiff "was initially—and incorrectly—awarded 30% earned time on Count 6." (Smith Decl. ¶ 36.) The error was discovered and corrected when Plaintiff's sentence calculation was reviewed, per ODOC policy, six months prior to his projected November 11, 2011 release date. (Smith Decl. ¶ 41.) On June 28, 2011, McCool advised Plaintiff that his projected release date had been changed to January 11, 2012.

On June 29, 2011, Plaintiff sent an inmate communication form requesting an administrative review of his projected release date.[2] In the communication form, Plaintiff explained that the Lane County Circuit Court corrected a "specific language error" that precluded his eligibility for a sentence reduction on Count Six and that he was now entitled to a 30% earned-time credit on that count. (Smith Decl. Ex. 23 at 1.) The next day, Plaintiff requested "an administrative review and hearing" on the issue of whether he should have been awarded time-served credit on Count Six in light of the fact that, when he was initially sentenced to 42 months probation, he was granted 42 days of time-served credit on Counts

[2] Between June 29, 2011 and July 21, 2011, Plaintiff sent nine inmate communication forms to various ODOC employees challenging "OISC's declination to award him credit for time served beyond the 61 days on Count 5, OISC's decision that he was only entitled to 20% earned time on Count 6, or both." (Smith Decl. ¶ 42.) He "also made repeated requests for administrative review of his sentence computation." (Smith Decl. ¶ 42.)

Five and Six.[3] (Smith Decl. Ex. 23 at 1; Dugan Decl. Ex. 1 at 3-4.)

On July 12, 2011, Plaintiff sent an inmate communication form indicating that he had not received a response to his request for an administrative review and hearing regarding the calculation of his projected release date. One week later, the Oregon Department of Administrative Services ("DAS") forwarded Smith a notice of tort claim submitted by Plaintiff on or about July 15, 2011.[4] Upon receiving Plaintiff's notice of tort claim, "OISC reviewed the Oregon Judicial Information Network (OIJN) and conferred with ODOJ and DAS to determine whether [P]laintiff's inmate communications . . . related to his pending litigation." (Smith Decl. ¶ 45.)

Once "it was determined that some of the issues raised in [P]laintiff's inmate communications—specifically, his claim that he was denied credit for time served—were subject to the pending litigation," (Smith Decl. ¶ 47), OISC's prison term analyst manager, Defendant Theresa Arendell ("Arendell"), sent Plaintiff a letter on July 25, 2011, stating: "Unfortunately, due to pending litigation, we are unable to respond to your concerns at this time." (Smith Decl Ex. 33 at 1.) In making this representation, Arendell relied on the OISC policy manual, which states: "If the

[3] The December 11, 2008 judgment sentencing Plaintiff to supervised probation stated: "The Defendant shall serve a period of 42 days confinement in the Lane County Jail, concurrently with the [42 days] imposed in Count 5, with credit for time served, considered served." (Dugan Decl. Ex. at 4.)

[4] The tort claims notice pertained to two post-conviction proceedings Plaintiff filed in Marion County Circuit Court.

inmate's questions pertain to the issues in a 'pending' legal action, the [Technical Program Specialist] will advise the caseload [Prison Term Analyst] to inform the inmate that due to the pending legal action, OISC is unable to answer their questions." (Smith Decl. Ex. 36 at 13.)

In the months that followed, Defendants continued to refuse to address Plaintiff's concerns regarding the calculation of his projected release date, despite claims that the pending litigation was unrelated. Plaintiff therefore remained in state custody, and he was ultimately released on January 11, 2012. Defendants still maintain the release date was correct.

Based on the foregoing facts, Plaintiff alleges two constitutional violations. First, he alleges a violation of the Eighth Amendment prohibition of cruel and unusual punishment based on the improper calculation of his prison sentence, resulting in 116 days of overdetention. Second, he alleges that Defendants' actions with regard to his complaints about his sentence calculation deprived him of liberty without due process of law, in violation of the Fourteenth Amendment.[5] He also asserts *Monell* and supervisory liability claims, as well as a state law claim for false imprisonment.

///

///

---

[5] (Pl.'s Resp. at 1) ("Plaintiff alleges that he was incarcerated 116 days past the expiration of his lawful sentence due to [D]efendants' declination to award him 'time served, as well as, earned time credits' on one of his counts. Plaintiff alleges that these actions violated his rights under the Eighth and Fourteenth Amendments and that he is therefore entitled to relief under 42 U.S.C. § 1983.")

**II. LEGAL STANDARD**

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d

136, 140 (9th Cir. 1981). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## III. DISCUSSION

### A. Eighth Amendment Claim

Detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of "deliberate indifference" to the prisoner's liberty interest. *Davis v. Oregon* No. CV 07-635, 2010 WL 3259924, at *1 (D. Or. Aug. 16, 2010), *aff'd*, 472 F. App'x 846 (9th Cir. 2012). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained that a prison official cannot be found liable under the Eighth Amendment on the basis of deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To put the *Farmer* formula into the context of the present case, "there must be facts, viewed in the light most favorable to [Plaintiff], on which a jury could find [D]efendants knew of a substantial risk that his release date had been miscalculated, that they subjectively drew that

inference from those facts, and still disregarded the risk." *Davis*, 2010 WL 3259924, at *2.

In this case, there simply are no facts on which a jury could reasonably find for Plaintiff on his Eighth Amendment claim. As in *Davis*, the calculations in this case were done according to ODOC policies and Defendants received advice from ODOJ. Moreover, nothing in the record suggests that the prison term analysts who conducted the reviews of Plaintiff's sentence (McCool, Black, etc.) "were in any position to modify, re-examine, or correct the established policies and procedures by which they calculated his release date." *Davis*, 2010 WL 3259924, at *2. In the Court's view, the authorities repeatedly cited by Defendants in support of their calculation (which they still maintain is correct) seem to be on point. There is nothing to suggest that Defendants subjectively ever concluded that Plaintiff's release date had been miscalculated and thereafter disregarded that conclusion. "Deliberate indifference requires something more than just being mistaken." *Id.* Accordingly, the Court recommends granting Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim.

**B. Fourteenth Amendment Claim**

Although the Fourteenth Amendment does not guarantee state prisoners a particular method of calculating prison sentences, where state law creates a statutory right to release from prison, it "also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated." *Haygood*, 769 F.2d at 1355. As Judge Mosman explained in *Davis*, when a prisoner raises

> a *factual* question about the calculation of his release date—i.e., that the prison was mistaken about the date on which he began serving his sentence, or had mistakenly counted the number of days he had already served—then this administrative process of Inmate Communication Forms, and the chance to file grievances, would be sufficient to satisfy due process. Certainly there is no requirement that a full-blown hearing of some kind be held for all such challenges. And if a prisoner raises factual questions about the calculation of his sentence, and the prison officials do nothing, or only go through the bare form of a response with no investigation—in one court's formulation, if they 'sit on [their] duff and [don't] do anything'—then the effective denial of any meaningful opportunity to be heard can amount to a denial of due process.
>
> . . . What *Haygood* imposes on prison officials is essentially a duty to investigate in good faith, and respond.

*Davis*, 2010 WL 3259924, at *3 (quoting *Alexander v. Perrill*, 916 F.2d 1392, 1395 (9th Cir. 1990)).

*Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993), on the other hand, addressed the scope of a prison official's duty to investigate when the issue is a purely legal one—i.e., when the parties disagree about the prisoner's entitlement to credits, but no facts are in dispute:

> Bagley argues that even if he was not entitled to credit for the time served on the vacated federal sentences, he has stated a failure-to-investigate claim under Section 1983. . . . There was nothing to 'investigate' here. There were no facts in dispute, simply a legal claim by Bagley that he was entitled to credit, a claim that was rejected by the defendant state prison officials until Bagley sued them in state court and obtained his credit by way of a settlement. So far as the federal Constitution is concerned, at least, the state officials were correct in rejecting Bagley's position. The state officials took a certain position, neither malicious nor unreasonable on its face, Bagley took them to court, and they then settled the case. We see no deprivation of due process here.

*Id.* at 330 (internal citation omitted).

Likewise, this Court can see no deprivation of due process here. "[I]n an administrative sense, [Plaintiff] had an opportunity to be heard. He raised questions about the recalculation of his sentence, and those questions were investigated and answered, repeatedly." *Davis*, 2010 WL 3259924, at *3. Whether the calculation was correct or not, due process doesn't require a full-blow hearing regarding Plaintiff's entitlement to credits. Moreover, there is nothing to suggest that Defendants sat "on their duffs and did nothing."

Lastly, there really were no facts in dispute concerning the claims presently being litigated; rather, it was merely a legal disagreement/ misunderstanding between Plaintiff and Defendants as to whether he was entitled to certain time-served and earned-time credits under the applicable statutes, rules and regulations. Defendants "took a certain position, neither malicious nor unreasonable on its face." *Bagley*, 5 F.3d at 330. Thus, as in *Bagley*, there was no deprivation of due process.

In sum, the Court recommends granting Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claim.

**C. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity shields government officials from liability "regardless of whether [their] error is a mistake of law, a mistake of fact, or a

mistake based on mixed questions of law and fact." *Id.* (citation and internal quotation marks omitted).

The Ninth Circuit employs a two-part test to determine whether a government official is entitled to qualified immunity: "first, we decide whether the officer violated a plaintiff's constitutional right; if the answer to that inquiry is 'yes,' we proceed to determine whether the constitutional right was 'clearly established in light of the specific context of the case' at the time of the events in question." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (citing *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)). Courts "may 'exercise [their] sound discretion in deciding which of the two p[arts] of the qualified immunity analysis should be addressed first.'" *Id.* (quoting *Pearson*, 555 U.S. at 236).

Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact with respect to his constitutional claims; in other words, the answer to the first part of the qualified immunity inquiry is "no." As a result, Defendants' "argument that they are entitled to qualified immunity is moot." *Mitchell v. Chairez*, No. CV 10-9377-VBF, 2012 WL 2321130, at *5 n.4 (C.D. Cal. May 7, 2012); *Dehne v. City of Reno*, 222 F. App'x 560, 562 (9th Cir. 2007) ("Because no constitutional violation occurred, the district court's grant of qualified immunity is no longer a live issue.")

**D. *Monell* and Supervisory Liability Claims**

*Monell* and supervisory liability claims both require an underlying constitutional violation. *See Watters v. City of Cotati*, No. C 10-2574, 2011 WL 4853590, at *6 (N.D. Cal. Oct. 13, 2011) (granting summary judgment on *Monell* and supervisory

liability claims because the plaintiff failed to demonstrate triable issue of fact as to his civil rights claims); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability."); *Rencher v. Nevada*, No. 2:11-cv-01040-MMD-CWH, 2012 WL 4963000, at *6 (D. Nev. Oct. 16, 2012) (granting summary judgment on supervisory liability claim because no constitutional violation had occurred).

There is no genuine issue of fact as to whether a constitutional violation occurred here. Accordingly, the Court recommends granting Defendants' motion for summary judgment on Plaintiff's *Monell* and supervisory liability claims.

**E. False Imprisonment**

As Plaintiff concedes, (Pl.'s Resp. at 21-22), his state law false imprisonment claim against Arendell, Black, McCool and Smith in their official capacities is "in essence [a] claim[] against the state of Oregon." *Johnson v. Rouse*, No. 6:10-cv-06112-AA, 2012 WL 1849664, at *1 (D. Or. Apr. 4, 2012) (citing OR. REV. STAT. § 30.265(1)). "It is well established that the Eleventh Amendment bars citizens from bringing suits in federal court against a state or state agency absence an express waiver of sovereign immunity by the state." *Id.* Accordingly, the Court recommends dismissing Plaintiff's state law false imprisonment claim without prejudice.[6]

///

///

[6] If there is a potential remedy here, it is a state law claim for false imprisonment, as Defendants' counsel suggested during oral argument.

## IV. CONCLUSION

For the reasons stated, Defendants' motion (Docket No. 41) for summary judgment should be granted.

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **September 23, 2013.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **October 10, 2013.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 4th day of September, 2013.

/s/ Dennis J. Hubel
__________________________________
DENNIS J. HUBEL
United States Magistrate Judge